UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHUC NGUYEN, ET AL.                    CIVIL ACTION

VERSUS                                 NO. 11-1799
                                         c/w 11-2705
                                       PERTAINS TO ALL CASES

AMERICAN COMMERCIAL LINES, INC.,       SECTION "B"(4)
ET AL.

ORDER AND REASONS

**Nature of Motions and Relief Sought:**

Before the Court is Defendant's Motion for Summary Judgment, Plaintiffs' Opposition, and Defendant's Reply. (Rec. Docs. No. 44, 51, & 60). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 44) is **DENIED.**

**Procedural History and Facts of the Case:**

This case arises out of the collision between the M/V TINTOMARA and Barge DM-932 on July 23, 2008 on the Mississippi River, the same event that gave rise to litigation in *Gabarick v. Laurin Maritime (America), Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009). As a result of the collision, oil discharged into the Mississippi River and traveled downstream into various water bodies, allegedly including estuaries within Plaquemines Parish, Louisiana. (Rec. Doc. No. 1 at 4-5). On July 24, 2008, the United States Coast Guard ("Coast Guard") designated Barge DM-932 as the

source of the discharge and named American Commercial Lines, Inc. ("ACL") as the responsible party under the Oil Pollution Act of 1990 ("OPA"). *Id.* at 5. ACL then hired Worley Catastrophe Response, LLC ("Worley") as its third party claims administrator. *Id.*

Between approximately June 11 and July 23, 2009, Plaintiffs' counsel, Michael A. Fenasci, submitted 224 "form claim letters" to Worley on behalf of commercial fishermen and seafood wholesalers allegedly affected by the oil spill. (Rec. Doc. No. 44-1 at 4-5). Each form letter sought recovery for damage to property, loss of profits, loss of earning capacity, and loss of subsistence. Each letter also requested payment of amounts loosely ranging from $4,000 to $30,000.[1]

On July 23, 2009, Worley requested additional information in substantiation of the claims submitted, including copies of each claimant's federal income tax returns for 2007 and 2008, "daily catch" or sales data for May–September 2008, and an explanation of each claimant's "lost days" calculation. (Rec. Doc. No. 44-1 at 5). Following that request, Mr. Fenasci and attorney Wayne Yuspeh submitted approximately forty-eight additional claims but did not provide all of the requested documents and information. (Rec. Doc. No. 44-1 at 6).

---

[1] Scans of each letter were provided to the Court as a DVD manual attachment, which will hereinafter be cited as "Rec. Doc. 51-1."

On July 25, 2011, approximately two years after first contacting Worley, Plaintiffs initiated this action, asserting claims under the OPA and the Louisiana Unfair Trade Practices Act. (Rec. Doc. No. 1). Roughly six months later, on March 15, 2012, Defendant filed a motion to dismiss on the grounds that the Plaintiffs failed to comply with the OPA's presentment requirement. (Rec. Doc. No. 13). The Court initially granted that motion to dismiss and entered judgment dismissing without prejudice. (Rec. Docs. 34 & 37). However, on Plaintiff's motion to reconsider, the Court vacated judgment and denied Defendant's motion to dismiss "because the Court's prior order [had] not assume[d] the truth of Plaintiffs' allegations and relied on 'evidence' in dismissing the claims at the pleading stage." (Rec. Doc. No. 44 at 1). At the Court's direction, Defendant filed the instant a motion for summary judgment on October 29, 2013. Hearing thereon was continued several times to allow the parties to collect and review the voluminous claims materials involved. (Rec. Docs. 47 & 50).

**Law & Analysis**

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). Because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

As to issues for which the nonmoving party has the burden of proof at trial, the moving party may satisfy its burden by demonstrating the absence of evidence supporting the nonmoving party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory

4

responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Present of claims under the Oil Pollution Act of 1990**

Congress passed the Oil Pollution Act of 1990, 33 U.S.C. § 2701, et seq. (the "OPA"), in the wake of the Exxon Valdez oil spill with an intent "to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *Rice v. Harken Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001)(citing Senate Report No. 101-94, reprinted in 1990 U.S.C.C.A.N. 722, 723.) Congress sought to achieve such goals by several means.

First, to effect prompt cleanup and compensation, the OPA authorizes the prompt designation of responsible parties who may be held strictly liability for certain damages arising from oil spills. Specifically, the OPA authorizes the Coast Guard to designate as a "responsible party" those it unilaterally deems responsible for oil discharged into navigable waters. *See*, *e.g.*, Gabarick *v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 744 (E.D. La. 2009); *United States v. Conoco, Inc.*, 916 F. Supp. 581, 583 (E.D. La. 1996). Those parties may be held strictly liability for removal costs and other specified damages, although they may

5

later seek contribution and indemnity from other culpable parties. *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*, 808 F. Supp. 2d 943, 959 (E.D. La. 2011)(citing 33 U.S.C. §§ 2709, 2710, 2713).

Second, the OPA imposes a presentment requirement under which claimants must present a claim to a responsible party and wait the shorter of 90 days or until the responsible party denies all liability before filing suit for damages. *Id.*; *see also* 33 U.S.C. § 2713. The purpose of this "presentment" requirement is to promote settlement and thereby reduce litigation and streamline claims processes. *Gabarick*, 623 F. Supp. 2d at 747-48; *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Third, the OPA created the Oil Liability Trust Fund (the "Fund"), a governmental entity managed by the Director of the Coast Guard's National Pollution Center, and established a claims process under which claimants may in some instances submit OPA claims to the Fund in lieu of suit in court. *See* 33 U.S.C. §§ 2713(b), 2701(11); Arthur J. Ewenczyk, *For A Fistful of Dollars: Quick Compensation and Procedural Rights in the Aftermath of the 2010 Deepwater Horizon Oil Spill*, 44 J. Mar. L. & Com. 267, 281-85 (2013). If a claimant accepts payment from the Fund, the government is then subrogated to the claimant's rights under the

OPA and may later assert those rights in litigation and thereby recoup any payments on claims. *Id.* at § 2715.

At issue here is whether the Plaintiffs satisfied the OPA's presentment requirement before initiating suit against ACL, the "responsible party." That requirement is set forth in 33 U.S.C. § 2713, which reads in relevant part:

(a) Presentation

Except as provided in subsection (b) of this section, all claims for removal costs or damages shall be presented first to the responsible party . . .

(b) Presentation to Fund

 (1) In general

 Claims for removal costs or damages may be presented first to the Fund—
          (A) if the President has advertised or otherwise
          notified claimants in accordance with section
          2714(c) of this title . . .

(c) Election

If a claim is presented in accordance with subsection (a) of this section and—
          (1) each person to whom the claim is presented
          denies all liability for the claim, or
          (2) the claim is not settled by any person by
          payment within 90 days after the date upon which
          (A) the claim was presented . . . the claimant may
          elect to commence an action in court against the
          responsible party or guarantor or to present the
          claim to the Fund.

33 U.S.C. § 2713

Thus, pursuant to subsection (a), all claims for damages under the OPA must first be presented to the responsible party

7

unless subsection (b) allows for immediate presentment to the Fund. Subsection (c) provides that once a claimant has presented a claim to the responsible party and waited the shorter of 90 days or until that party denies all liability, she may elect to either initiate suit in court or present a claim to the Fund. Thus, unless subsection (b) allows for an exception, which is not the case here, subsections (a) & (c) make presentment a mandatory condition precedent and failure to satisfy their requirements will result in dismissal. *See*, *e.g.*, *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir. 1995); *In re Oil Spill by the Oil Rig Deepwater Horizon*, 808 F. Supp. 2d 943, 964 (E.D. La. 2011).

What "presentment" of a "claim" *substantively* requires of parties seeking redress from responsible parties is for the most part made clear by statutory language. "Claim" is defined as "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident." 33 U.S.C. § 2701. "Damages" are defined to include removal costs, real property damage, loss of subsistence use of natural resources, loss of revenues, loss of profits, and loss of public services. *Id.; see also* 33 U.S.C. § 2702.

Here, Defendant moves for summary judgment primarily on the grounds that Plaintiffs have not met the substantive requirements imposed by section 2713. The crux of their argument is that the

8

Plaintiffs did not properly present their claim under section 2713 because they failed to provide additional information and substantiating documentation as requested by Worley. After further consideration, the Court disagrees that such substantiating evidence is required to present a claim to a responsible party.

The Plaintiffs clearly satisfied the substantive presentment requirements imposed by the language of the OPA itself. That is, each Plaintiff requested a sum certain, in writing, for damages recoverable under the OPA. Each plaintiff submitted a written claim letter requesting compensation for a specific amount and itemizing damages for property damage, cleaning costs, and loss of income. (Rec. Doc. 51-1).[2] The majority of Plaintiffs have also satisfied section 2713's procedural requirements. 224 of the 272 Plaintiffs submitted claims to Worley between June 11, 2009 and July 23, 2009, (Rec. Doc. No. 44-1 at 4-5), and did not initiate this action until July 25, 2011, well beyond the requisite 90-day waiting period. The remaining 48 claims were presented within the 90-day period but, considering that several years have passed since the initiation of this suit, in this instance the failure to wait 90 days before submitting those

---

[2] Plaintiffs provided a DVD manual attachment to the Court with scans of the documents provided to Worley during the claims process. Defendant does not dispute the authenticity of these documents, nor does it contend that any of the Plaintiffs failed to request the specific sums certain set forth therein.

claims should not be grounds for dismissal. More than enough time has passed to cure this deficiency.

ACL contends that the requirements of 33 C.F.R. § 136.105 apply to Plaintiffs' claims and that Plaintiffs have not met those requirements because they failed to produce evidence in support of their claims during the presentment process. More specifically, ACL contends that the Plaintiffs did not properly present their claims because they did not (i) substantiate their lost earnings claims with tax returns, daily catch records, or otherwise document the number of days they could not work, (ii) provide invoices for hull cleaning expenses, or (iii) provide a map identifying each claimants' use of the affected areas. This argument must be rejected for several reasons.

First, it entails error as a matter of statutory interpretation. It is axiomatic that the interpretation of a statute begins and ordinarily ends with the text of the statute. *See*, *e.g.*, *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475. ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished.") Moreover, "[s]tatutory definitions control the meaning of statutory words . . . in the usual case." *Burgess v. United States*, 553 U.S. 124, 129-30 (2008). (quoting *Lawson v.*

10

*Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)). Only when application of an undefined term's plain meaning renders the term "opaque," "translucent," or ambiguous," should the court turn to extraneous sources. *United States v. Barlow*, 41 F.3d 935, 942 (5th Cir.1994), cert. denied, 514 U.S. 1030, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995). Here, the OPA's language concerning presentment is statutorily defined and clear on its face. Section 2713(a) provides that "all claims for . . . damages shall presented first to the responsible party or guarantor" unless subsection (b) mandates presentation to the Fund, which is not the case here. 33 U.S.C. § 2713(a). As noted above, "claim" is defined as "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident." 33 U.S.C. § 2701. "Damages" are defined to include removal costs, real property damage, loss of subsistence use of natural resources, loss of revenues, loss of profits, and loss of public services. *Id.; see also* 33 U.S.C. § 2702. There is nothing ambiguous about these distinctly defined terms. Accordingly, the Court now holds that Section 2713(a) requires only that claims be presented as written requests, for sums certain, and for an enumerated type of damage. Consequently, there is no statutorily mandated need in this instance to look to extraneous sources such as 33 C.F.R. § 136.105.

11

Second, the plain language of 33 U.S.C. § 2713(e), entitled "Procedure for claims against Fund," makes clear that 33 C.F.R. § 136.105 is inapplicable claims made to responsible parties. That section delegates power to the executive branch to "promulgate . . . regulations for the *presentation, filing, processing, settlement, and adjudication* of claims under this Act against *the Fund*." 33 U.S.C. § 2713(e) (emphasis added). In light of the Supreme Court's admonition that "[a]n agency literally has no power to act . . . unless and until Congress confers power upon it," *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986), it is clear that 33 C.F.R. § 136.105 is inapplicable to claims to responsible parties because the Coast Guard lacks any rule-making authority concerning claims to entities other than the Fund.

Finally, the more obvious reason for requiring claimants to substantiate their claims when presenting to the fund are absent when claims are presented to private parties. As explained above, when claims are presented to and a claimant accepts payment from the Fund, the Fund is then subrogated to the claimant's OPA rights. In other words, the government is effectively purchasing the claimant's right to sue under the OPA and recouping the expense through litigation. Before tax dollars are in this way advanced for and invested in private OPA claims, there is an obvious concern that the claim be vetted, supported by evidence "deemed necessary by the Director, NPFC," and otherwise shown

12

valid. 33 C.F.R. § 136.105. When claims are presented to private parties, on the other hand, government funds are not so directly at risk.

ACL's claim that district courts have applied C.F.R. § 136.105 to claims against private parties construes those courts' opinions far too broadly. In *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309 (E.D. Va. 1993), for example, the Eastern District of Virginia dismissed OPA claims after holding that the plaintiffs had failed to present their claims to the responsible party in accordance with section 2713. The court emphasized that the plaintiffs failed to present their claims in two respects, neither of which entailed application of section 136.105. First, the court noted that the plaintiffs had not waited 90 days or until the responsible party denied all liability as required by section 2713(c); instead, the plaintiffs had actually filed suit *before* presenting a claim. *Id*. at 311. Second, the court held the plaintiffs failed to "'present' a claim within the meaning of" section 2713(a) because the plaintiffs submitted only conclusory claims for "losses resulting from the destruction of rent property" without requesting a sum certain for any of the damages alleged. *Id*. In holding that those conclusory claims not satisfy section 2713(a), the court explained that because the purpose of the presentment requirement is to induce settlement, claimants must inform responsible parties with "some precision" of the

13

damages alleged and amount of monetary damages sought, as "*underscored* by the regulations issued by the United States Coast Guard pursuant to OPA setting forth the requirements for filing such claims *against the OPA Fund.*" *Id.* (citing 57 Fed. Reg. 36314 (1992). It remains clear, however, that the *Colonial Pipeline* court needed no *analytical* recourse to the regulations because the plaintiffs there failed to present their claims with the precision imposed by the statutory language of section 2713—-they requested no sum certain. In a word, the court's reference to *Colonial Pipeline* is *dicta*.

Finally, ACL's contention that enforcing no more than the plain language of the OPA would undermine the statute's purpose is unpersuasive. ACL contends that failing to apply 33 C.F.R. § 136.105 would "defeat the purpose of the presentment requirement which 'is to enable the parties to negotiate, if possible, a settlement of potential claims resulting from an oil spill without having to resort to litigation.'" (Rec. Doc. 60 at 1 (citing *Colonial Pipeline Co.*, 830 F. Supp. At 311.)). This argument is far too reductive. As evidenced by the *Colonial Pipeline* quote on which ACL relies, the purpose of presentment is to enable settlement "if possible," and settlement remains entirely possible even where private parties do not have the power to demand evidence of their choosing throughout the settlement process. Moreover, where a statute's language is

14

clear, "vague notions" of its purpose cannot "overcome the words of its text regarding the specific issue under consideration." *Mertens v. Hewitt Associates*, 508 U.S. 248, 261 (1993).

### Conclusion

In presenting their claims to Worley, the Plaintiffs provided all that the OPA requires of them. The vast majority of Plaintiffs also satisfied the procedural requirement that they wait 90 days after presenting their claims before filing. Those that did not, have since waited several years.[3] Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 44) is **DENIED**.

New Orleans, Louisiana, this 17th day of July, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[3]Given the apparent differences between processing claims against private entities and the Fund, policymakers may want to reconsider the existing statutory framework in this important area.

15