UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHUC NGUYEN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1799**<br>**c/w 11-2705**<br>**REF ALL CASES** |
| **AMERICAN COMMERCIAL LINES, LLC, ET AL.** | **SECTION "B"(4)** |

### ORDER AND REASONS

Before the Court are defendants' partially opposed motion for summary judgment to dismiss the claims of all individual plaintiffs for damage to personal property and loss of subsistence use of natural resources (Rec. Docs. 177, 191, 195) and an opposed motion for summary judgment to dismiss plaintiffs' claims for lost profits/loss of earning capacity (Rec. Docs. 178, 188, 195).[1] For the reasons stated below,

**IT IS ORDERED** that the motion for summary judgment on claims for damage to personal property (Rec. Doc. 177) is **GRANTED**, without objection on that aspect of the motion, and **DENIED** regarding claims for loss of subsistence use of natural resources (Rec. Doc. 177; and

**IT IS FURTHER ORDERED** that the motion for summary judgment on claims for lost profits/loss of earning capacity (Rec. Doc. 178) is **DENIED**.

---

[1] Defendants' Motion to Dismiss for failure to produce tax returns (Rec. Docs. 175) was addressed in a separate ruling.

1

I.   **FACTS AND PROCEDURAL HISTORY**

This action arises from the aftermath of a collision between Barge DM-932, a tank barge owned by defendant American Commercial Lines LLC ("ACL"), and the M/V TINTOMARA. Rec. Doc. 175-1 at 1. As a result of the collision on July 23, 2008, oil spilled from Barge DM-93, and therefore, the Mississippi River was closed to vessel traffic from July 23, 2008 to July 28, 2008. Rec. Doc. 178-1 at 20. ACL was the designated "Responsible Party" under the Oil Pollution Act (OPA), 33 U.S.C. § 2701 *et seq.*, meaning regardless of fault, ACL must resolve various third-party claims related to the oil spill. Rec. Doc. 175-1 at 1-2.

Plaintiffs are D&C Seafood, Inc., a seafood wholesaler, and 223 individual plaintiffs—commercial fishers—who harvest and sell seafood in and around the waters off the lower Mississippi River. Rec. Doc. 175-1 at 2. They assert claims against defendants for: (1) damages to real or personal property, (2) loss of subsistence use of natural resources, and (3) loss of profits or impairment of earning capacity. Rec. Doc. 1 at 6.

This Court received notice of an automatic stay of proceeding when ACL filed for bankruptcy in February 2020. Without providing any notice of the dissolution of the stay, defendants filed the current motions for summary judgment in March 2021.[2]

---

[2] Defendant's bankruptcy was terminated in July 2020. *See In re American Commercial Lines*, No. 20-30981, (Bankr. S.D. Tex. 2020).

**II. LAW AND ANALYSIS**

   **A. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and

present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 358 (5th Cir. 2017).

**B. Claim for Lost Profits or Loss of Earning Capacity**

Under the Oil Pollution Act of 1990 (OPA), "plaintiffs must establish that their economic losses were due to the injury, destruction, or loss of property or natural resources that resulted from the discharge." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 168 F. Supp. 3d 908, 916 (E.D. La. 2016); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 382 (5th Cir. 2006) (citing 33 U.S.C. § 2702(a),(b)(2)). "[I]t is a simple question of causation." *Bouquet Oyster House, Inc. v. United States*, No. 09-3537, 2011 WL 5187292, at *7 (E.D. La. Oct. 31, 2011).

Plaintiffs' evidence is minimally sufficient to show that a genuine issue of material fact remains as to whether plaintiffs incurred damages for lost profits/loss earnings capacity resulting from the July 23, 2008 oil spill. They provide a variety of evidence to prove that the oil spill caused lost profits and loss of earning capacity for each individual plaintiff. On the second page of the presentment letters that plaintiffs submitted, each plaintiff establishes individual claims for fishing days lost, which range from two to twenty-four days. Rec. Doc. 188 at 3; *see also* Rec. Doc. 51-1. Plaintiffs state that disruption generally occurred for twenty-five days after the oil spill, but they do not contend that every plaintiff suffered damages for the entire twenty-five-day period. Rec. Doc. 188 at 3. Additionally, plaintiffs cite deposition testimony from multiple fishermen who encountered oil in the water after the July 23, 2008 oil spill, and who incurred profit losses due to their discovery of oil near boats, fishing grounds, and seafood traps. *Id.* at 14. Just because *some* fishermen were able to harvest seafood at *some* point during the twenty-five days after the oil spill, does not necessarily render plaintiffs' individual claims for profit losses meritless. On one single day, some fishermen could be precluded from harvesting seafood due to the oil spill, where others in a slightly different area were not. Thus, the specificity as to which plaintiffs claimed damages is sufficient under the OPA standard,

5

and whether plaintiffs actually incurred profit losses and loss of earning capacity remains a question for the fact finder.

Defendants maintain, however, that plaintiffs' lost profits and loss of earning capacity could not have been due to the oil spill because Louisiana's territorial waters were never closed to the commercial harvesting of shrimp, crab, oyster, and finfish. Rec. 195 at 1-2. According to defendants, plaintiffs, at most, only have valid claims for when the Mississippi River was closed from July 23, 2008 to July 28, 2008. *Id.* at 5. But a genuine issue of material fact remains as to whether the oil spill did indeed affect plaintiffs' ability to harvest seafood outside of when portions of the Mississippi River were closed. Plaintiffs go beyond the pleadings to demonstrate that claimants were unable to fish at multiple instances during a twenty-five-day period after the oil spill. They provide presentment letters and docket receipts containing a record of the location of fishing activity, the hours/days on which claimants fished, the amount of catch sold, the price paid by and identity of the dock owner for the catches, and the species of sea life caught and sold to the dock owner. Rec. Doc. 188 at 3. This evidence indicates a genuine dispute as to whether plaintiffs lost earning capacity due to the oil spill.

Defendants rely on an expert report prepared by Dr. Ralph Markarian to allege that "there is no evidence that any oil went outside the main channel of the Mississippi River" and that

6

"Louisiana state trustees determined that there were no impacts to the areas outside the main channel of the Mississippi River— including where the plaintiffs docked their vessels and harvested seafood." Rec. Doc. 178-11 at 8. This claim, however, is contradicted by other areas of the report indicating that oil did escape the main channel of the Mississippi River. *See e.g.*, Rec. Doc. 178-2 at section 3-2 ("One of the overflight maps indicated oil outside of the river channel in the Delta [National Wildlife Refuge]."); Rec. Doc. 188 at 10. Thus, this Court need not reach a decision as to whether plaintiffs' affidavits, Rec. Docs. 188-6 and 188-7, are admissible. *See* Rec. Doc. 195 at 4-5. By solely relying on Dr. Markarian's expert report, plaintiffs' depositions, plaintiffs' dock receipts, plaintiffs' presentment letters, and other evidence presented, it is apparent that a genuine issue of material fact remains as to whether oil left the main channel of the Mississippi River and negatively affected commercial fishing areas.

### C. Claims Regarding Loss of Subsistence Use of Natural Resources

"Each responsible party for a vessel or a facility from which oil is discharged . . . is liable for the removal costs and damages specified in subsection (b) that result from such incident." The Oil Pollution Act of 1990, 33 U.S.C. § 2702(a). These damages include "[d]amages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses

7

natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources." *Id.* § 2702(b)(2)(C).

Defendants declare that plaintiffs' claims for loss of subsistence use of natural resources should be dismissed because each plaintiff claimed a loss of sixty dollars per day. Rec. Doc. 177-1 at 10-11. Defendants suggest that because all plaintiffs used a sixty-dollar-per-day figure for their loss of subsistence use, they did not properly specify damages under OPA. Rec. Doc. 195 at 7. Plaintiff did, however, individualize their claims. In each presentment letter, plaintiffs include the number of fishing days lost due to the July 23, 2008 oil spill. Rec. Doc. 51-1; Rec. Doc. 188-1. Plaintiffs explain that they used sixty dollars per day to calculate loss of subsistence use because that number represented the "cost of retail seafood." Rec. Doc. 191-1 at 2; *see also* Rec. Doc. 178-5 at 5-6. Plaintiffs claim that each individual plaintiff experienced loss of subsistence use equal to the number of days that each plaintiff was precluded from harvesting seafood multiplied by the daily cost of retail seafood during that time period. Rec. Doc. 191-1 at 1-2. A factual question remains as to whether sixty dollars is an accurate assessment of the retail cost of seafood. Again, albeit minimally, plaintiffs have presented enough evidence to demonstrate a genuine issue of material fact as to whether subsistence use damages resulted from

8

the July 23, 2008 oil spill. Thus, dismissing plaintiffs' claims for loss of subsistence use of natural resources is not a question appropriate for summary disposition at this time.

### D. Claims Regarding Personal Property

Plaintiffs waive their claims for damage to personal property. Rec. Doc. 191 at 1. Accordingly, this claim is dismissed.

New Orleans, Louisiana this 3rd day of November 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE